354 P.2d 572

LaVon Belnap DUNCAN, Administratrix of the Estate of Marion W. Duncan, Deceased, Plaintiff and Appellant,

v.

WESTERN REFRIGERATION CO., d/b/a Utah Ice & Storage Company, and Norton F. Hecker, and Hartford Accident & Indemnity Company, Defendants and Respondents.

No. 9173.

Supreme Court of Utah.

July 22, 1960.

Crockett, C. J., dissented.

Ramon M. Child, Child, Spafford & Young, Salt Lake City, for appellant.

Moreton, Christensen & Christensen, Salt Lake City, for respondents.

HENRIOD, Justice.

Appeal from a no cause of action verdict. Affirmed with costs to defendant.

Under familiar principles of appellate review the following facts may be canvassed on appeal in this case:

Deceased had crossed Main Street, Salt Lake City, in a westerly direction between Cleveland Avenue and 13th South, not in a marked cross-walk, on a clear morning. He went to get a pillow to use in the truck in which he was traveling. Defendant, only eyewitness to the accident, was driving North on Main Street (a four-lane highway) in the outside lane following a car in front of him and one to the left in the inside lane, at about 25–30 m. p. h. Suddenly the leading cars slowed down and defendant applied his brakes, and as his wheels were sliding, "I seen the man just as he came off the fender of the car, and that is the first time I had seen him," and "I didn't have no time to determine whether he had been running or what." Decedent's head struck the windshield, and he died without regaining consciousness. Drivers of the other cars did not stop and were unidentified.

The only evidence of defendant's negligence offered by plaintiff was a fragment of a conversation one Kelly testified he heard between defendant and Kelly's wife, who said defendant had remarked "I didn't even see him" which evidence, over objection without merit,[1] was expanded on cross-examination to include other statements of Mrs. Kelly to include her assertion that defendant also said "'He ran into the side of my car."

Plaintiff offered no evidence as to defendant's speed on her case in chief, although that was one of the bases of negligence upon which she allegedly relied, but defendant testified thereafter that he was traveling 25–30 m. p. h. Plaintiff proffered in rebuttal the testimony of a police officer as to brake marks and moved to re-open the case for that purpose, but the testimony was objected to and excluded, and permission to re-open denied.

It is recognized that in cases like this the trial court has considerable latitude in admitting or excluding such evidence, which properly should have been introduced in the case in chief.[2] Perhaps it may have been as well to permit the testimony, but we see no prejudicial error in its exclusion, particularly since ample evidence, if be-

1. 20 Am.Jur. 463–4, Sec. 551.

2. VII Wigmore, Evidence, 523, Sec. 2113.

lieved by the jury, easily and reasonably could have pointed up decedent's own negligence,[3]—a conclusion not shared by plaintiff as reflected in the assignments of error in the giving of instructions as to contributory negligence.

■■ Other errors assigned had to do with refusal to instruct as to last clear chance and to the effect that a witness may be impeached by prior inconsistent statements. As to the last clear chance contention, the facts of this case do not lend themselves in any degree to the application of that doctrine, and as to the contention that the court should have instructed to the effect that prior inconsistent statements may impeach a witness, the general instruction that the jury might consider any fact or circumstance which in the judgment of the jury affected the credibility of any witness, and other instructions as to believability of false testimony were given that in substance took care of the objection.

WADE, McDONOUGH and CALLISTER, JJ., concur.

CROCKETT, Chief Justice (dissenting).

I am unable to agree with the treatment given the assignment of error relating to the exclusion of the plaintiff's evidence concerning speed wherein the majority opinion says, "but we see no prejudicial error in its exclusion, particularly since ample evidence, if believed by the jury, easily and reasonably could have pointed up decedent's own negligence, * * *" It is my view that the statement just quoted is irrelevant to the issue involved. The mere fact that there was evidence from which the jury could find the deceased negligent, should not preclude the plaintiff from presenting all available competent evidence bearing upon the issues, all of which, including the question of the deceased's negligence, should have been tried by the jury, upon all available competent evidence.

The defendant elected to testify concerning speed. The purpose was to impress the jury that he was not speeding and was driving in a careful manner. This opened the door for plaintiff to present on a rebuttal any available evidence which might tend to refute it. Therefore, I do not see how the conclusion can be escaped that it was error to deny plaintiff the right to offer evidence concerning speed. Furthermore, even if the matter had only been discretionary with the trial court, it seems to me that the exclusion of the evidence would have been an abuse of discretion. The court's duty is to exercise its discretion in favor

3. Sec. 41–6–79, Utah Code Annotated 1953.

of admitting all competent evidence offered in good faith which has a bearing on the issues because that is the only way that the truth may be found and justice done.

I concede quite willingly that there may exist a question as to whether the above error, considered by itself, would warrant a reversal of the case. This is so because, from the state of the record, it seems doubtful whether the plaintiff could present evidence which would justify a finding that the defendant was driving at an unreasonable rate of speed which was a factor in causing Mr. Duncan's death. However, whether this error alone would require a reversal need not be decided because there is more serious and prejudicial error.

The error just referred to relates to testimony brought out on cross examination from Lorin Kelly, a witness called by the plaintiffs. He stated in substance that he and his wife had arrived upon the scene immediately after the accident and that while he was ministering to the needs of Mr. Duncan he overheard part of a conversation between the defendant driver, Mr. Hecker, and the witness's wife; and that in reply to Mrs. Kelly's question as to how the accident happened Mr. Hecker replied, "I didn't even see him."

This was introduced as an admission against interest of Mr. Hecker and there is no question but that the defense was entitled to expose that full conversation on cross-examination to bring out any qualification or explanation of the statement. However, under the guise of doing so, the defense went way beyond that prerogative and elicited through the witness Kelly, self-serving statements allegedly made by Mr. Hecker to Mrs. Kelly. The portions of Mr. Kelly's testimony pertinent to the point under discussion are set out below:

"Q. Your wife told you, didn't she, he said something like, 'I didn't even see him, he ran into the side of my car'?"

The above question obviously did not seek to elicit part of the conversation Mr. Kelly overheard, but related to what his wife may have told him. The plaintiff's counsel interposed an objection to it saying:

"It calls for a hearsay answer to a hearsay question."

The court overruled the objection and upon request of the witness the question was restated as follows:

"Q. *Did your wife tell you subsequently* that Mr. Hecker said, 'I didn't even see him. He ran into the side of my car'? A. *She said he said he walked into the side of his car.*

"Q. You were present when your wife's deposition was taken, weren't you? A. Yes, sir.

"Q. And did you hear her testimony? A. Yes, sir; I did.

"Q. And at that time *she stated that he ran into the car,* didn't she? A. I believe she did." (Emphasis added.)

The foregoing statements elicited from Mr. Kelly were plainly designed to put before the jury an extra-judicial statement allegedly made by Mr. Hecker to Mrs. Kelly, who in turn allegedly so told her husband. The only fact which the witness knew, or pretended to know, was that his wife so told him. I do not see how anything could be plainer hearsay.[1] It was thus incompetent and the objection should have been sustained.

As to the prejudicial effect of the above testimony: the defendant is not now in a good position to urge its unimportance. In view of his persistence in getting it before the jury, it would seem that he must have thought it would have a persuasive effect upon them. The plaintiff joins him in this belief. I do not think that we should conjecture that they were both wrong in believing the testimony important. Consequently, because of the errors discussed above, I think a new trial should be granted.

1. See McCormick, On Evidence, Secs. 10, 223, 224, 225 and 226.